792 P.2d 765

Stephen Jay SHELBY, Plaintiff/Appellant,

v.

ACTION SCAFFOLDING, INC., Defendant/Appellee.

No. CA-CV 89-0170.

Court of Appeals of Arizona, Division 2, Department A.

Jan. 30, 1990.

Review Granted and Cross Petition for Review Granted June 19, 1990.

&#9758;63

John D. Kaufmann by Kathleen O'Dea, Tucson, for plaintiff, appellant.

Chandler, Tullar, Udall & Redhair by Christopher J. Smith and John W. McDonald, Tucson, for defendant, appellee.

## OPINION

ROLL, Judge.

Plaintiff Stephen Jay Shelby appeals from an order of the trial court entering judgment in favor of Action Scaffolding, Inc. (Action), and assessing costs against Shelby. This matter involves a question of first impression in this jurisdiction, to wit, in light of A.R.S. § 12–2504, what effect does a settlement have on a jury's verdict against a non-settling defendant? For the reasons set forth below, we vacate the judgment of the trial court and remand for entry of judgment in favor of Shelby.

## FACTS

On November 5, 1986, Stephen Shelby was hanging drywall at a church in Pima County when he fell from a scaffold manufactured by General Scaffolding (General) and erected by Action. Shelby sustained serious and permanent injuries as a result of the fall.

## PROCEDURAL HISTORY

Shelby filed a lawsuit against various corporations, including Action and General. In his amended complaint, Shelby alleged

strict liability against General and other manufacturers and distributors of components of the scaffold, and alleged negligence on behalf of Action. During trial, Shelby entered into a settlement agreement requiring General to pay Shelby $250,000 in settlement of all strict liability claims. This settlement agreement left the negligence claim against Action to be litigated.

The jury returned a verdict finding that Action was 30 percent at fault and Shelby was 70 percent at fault as between these two parties. The jury concluded that Shelby's damages totalled $650,000.

After the verdict was returned, the trial court granted Action an offset or credit for the $250,000 settlement payment received by Shelby from General. The trial court determined that since the jury returned a verdict against Action of 30 percent of $650,000, or $195,000, and Shelby had already received $250,000 as a result of his settlement with General, Action owed Shelby nothing. The trial court then awarded Action costs as the prevailing party.

## ISSUES ON APPEAL

On appeal, Shelby argues that the trial court (1) erred in deducting General's $250,000 settlement from that portion of damages attributable to Action, and (2) erred in assessing costs against Shelby.

### Trial Court's Ruling Awarding Action a Reduction in the Amount of General's Settlement

Shelby maintains that the trial court erred in reducing Shelby's verdict against Action by the amount of the settlement payment made by General. The trial court's ruling regarding this reduction is a question of law and is therefore reviewed *de novo*. *Tovrea Land & Cattle Co. v. Linsenmeyer*, 100 Ariz. 107, 114, 412 P.2d 47, 51 (1966); *Aldabbagh v. Ariz. Dept. of Liquor Licenses*, 162 Ariz. 415, 783 P.2d 1207, 1208 (Ct.App.1989).

Action responds that A.R.S. § 12–2504(1) specifically provides for a non-settling party to receive credit for settlement payments made by a joint tortfeasor. A.R.S. § 12–2504 states:

§ 12–2504. Release or covenant not to sue

If a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death both of the following apply:

1. It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide, but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant or in the amount of the consideration paid for it, whichever is greater.

2. It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.

The trial court agreed with Action that § 12–2504(1) required that Shelby's verdict against Action be reduced by the amount of the settlement.

We decline to give this particular statutory provision the construction urged by Action and adopted by the trial court. The statute provides that any settlement reduces the "claim" against other tortfeasors. "Claim" means the amount of damages as determined by an impartial factfinder. *Hampton v. Safeway Sanitation Servs., Inc.*, 725 S.W.2d 605, 610 (Mo. App.1987) (interpreting Missouri statute substantially the same as A.R.S. § 12–2504). Here the total claim was for $650,000. A.R.S. § 12–2504 requires that the jury's calculation of damages, that is, $650,000, be reduced by the amount of General's settlement, to wit, $250,000. Shelby's claim having been reduced by the amount of General's settlement, Action was required to pay 30 percent of $400,000, or $120,000.[1] *Rittenhouse v. Erhart*, 126

1.   $650,000 damages
  –  250,000 settlement
    $400,000
  –  280,000 70 percent (contributorily negligent)
    $120,000 judgment

Mich.App. 674, 337 N.W.2d 626, 630 (1983); *Jensen v. A.R.A. Servs., Inc.,* 736 S.W.2d 374 (Mo.1987) (en banc); *Hampton, supra;* Heft & Heft, *Comparative Negligence Manual* § 4.250 (rev. ed. 1986). *But see Scott v. Cascade Structures,* 100 Wash.2d 537, 544, 673 P.2d 179, 183 (1983); *Lemos v. Eichel,* 83 Cal.App.3d 110, 117–18, 147 Cal.Rptr. 603, 606–07 (1978).

Shelby suffered $650,000 in damages. Even adding the $250,000 settlement payment by General to the $120,000 award against Action, the total of the two amounts leaves Shelby with an uncompensated $280,000 loss. Accordingly, the result reached here does not cause Shelby to receive compensation in excess of his damages. *Compare Egurrola v. Szychowski,* 95 Ariz. 194, 388 P.2d 242 (1964) ($10,000 settlement by negligent defendant should be credited to $250,000 verdict against joint tortfeasor); *Riexinger v. Ashton Co.,* 9 Ariz.App. 406, 453 P.2d 235 (1969) ($5,000 settlement against negligent defendant should be applied to $20,000 verdict against joint tortfeasor, since jury set plaintiff's damages at $20,000 and to allow him to recover more than $20,000 is to go beyond making plaintiff whole); *American Home Assurance Co. v. Vaughn,* 21 Ariz.App. 190, 517 P.2d 1083 (1974). *But see Charles v. Grant Eagle Mkts.,* 513 Pa. 474, 522 A.2d 1 (1987) (unjust to plaintiff to assume that jury's verdict setting damages is accurate gauge of damages sustained by plaintiff).

This approach also embraces the public policy consideration that the law favors compromise and settlement. *Dansby v. Buck,* 92 Ariz. 1, 11, 373 P.2d 1, 8 (1962). To deduct General's settlement from the sum the jury determined that Action should pay would do violence to the jury's intent and reward the non-settling party by requiring the settling party to bear the entire burden of damages, all the while depriving the plaintiff of less than full compensation. *Jensen,* 736 S.W.2d at 378.

Although Action cites authority in other jurisdictions for the proposition that Action was entitled to have the jury verdict against Action reduced by the entire amount of the settlement, we do not find it persuasive. The Washington Supreme Court relied on the legislative history of the contribution statute which said that the "final judgment of the claimant is reduced by the amount paid for a release." *Scott,* 100 Wash.2d at 542, 673 P.2d at 182. Accordingly, the court reduced the jury verdict by the plaintiff's comparative negligence to reach the final judgment against the defendant, then deducted the settlement. Arizona has no such legislative history to mandate a similar result. In *Lemos, supra,* a California court used a similar formula. The jury, however, apportioned total fault among the plaintiff, the non-settling defendants, and others. 83 Cal.App.3d at 116, 147 Cal.Rptr. at 605. In this case, fault was only apportioned between Action and Shelby.[2] If we followed the trial court's formula, we would find Shelby 70 percent at fault overall. That is contrary to the jury's finding that he was 70 percent at fault as to Action. *See Jensen,* 736 S.W.2d at 377.

The jury found that as to Shelby, Action was 30 percent at fault and awarded damages. Using the trial court's formula, Action would pay nothing despite the jury's finding. By deducting the settlement from the total damages, Action is held to the jury's finding of 30 percent fault.

We hold that A.R.S. § 12–2504 requires that the amount of a settlement payment should be deducted from the overall damages sustained by the plaintiff. The non-settling defendant's liability should then be calculated based on the remaining sum.

## ASSESSMENT OF ATTORNEYS' FEES AND COSTS

The trial court, at Action's urging, incorrectly calculated the damages owed by Action to Shelby. Because Shelby was the

---

**2.** Because A.R.S. § 12–2506(C) had not been enacted when this matter was tried, the jury made no determination as to the liability of General.

prevailing party, costs should not have been awarded Action.

For the reasons set forth above, we vacate the judgment of the trial court and remand this matter for entry of judgment in favor of Shelby in the amount of $120,-000. The trial court's order awarding Action costs is vacated and, on remand, costs are to be awarded Shelby.

HATHAWAY, J., concurs.

HOWARD, Judge, dissenting.

I do not agree with the majority opinion because it gives the plaintiff a windfall and does not encourage settlements which is the purpose of A.R.S. § 12–2504. See *Bishop v. Klein*, 380 Mass. 285, 402 N.E.2d 1365 (1980). There is an annotation on this subject in 71 ALR4th 1108 et seq., in which cases on both sides of this issue can be found. In addition to those cited as contra in the majority opinion are the following: *Gomes v. Brodhurst*, 394 F.2d 465 (3rd Cir.1967); *Theobold v. Angelos*, 44 N.J. 228, 208 A.2d 129 (1965); *Peterson v. Multnomah County School Dist. No. 1*, 64 Or. App. 81, 668 P.2d 385 (1983); *Erdman v. Lower Yakima Valley, Washington Lodge No. 2112 of B.P.O.E.*, 41 Wash.App. 197, 704 P.2d 150 (1985); and *Pierringer v. Hoger*, 21 Wis.2d 182, 124 N.W.2d 106 (1963).

The plaintiff should receive only that to which he is entitled. Under the method used by the majority opinion the plaintiff would be receiving approximately 55 percent of the total damages which is more than the 30 percent determined by the jury, thus giving him more than that to which he is entitled.[1]

The court in *Peterson v. Multnomah County School Dist. No. 1*, supra, hit the nail on the head when it said:

Although there is some logic to plaintiff's argument, we do not adopt it. If only one plaintiff and one defendant are before it, the jury's apportionment of fault properly should reflect its view of how much responsibility *those* parties bear for the injury *compared to one another*, not compared to the universe of other possible parties about whom the jury is not informed and, theoretically, is unaware. Moreover, settlements are generally based on the parties' speculations about what the plaintiff would *recover* against the defendant if the case went to trial. Presumably, parties take comparative fault into account in reaching settlements, and they also consider what the jury might find the comparative fault of codefendants to be. The effect of plaintiff's argument would be to place the risk of a codefendant's advantageous settlement on the defendant who did not settle rather than on the plaintiff who did.

64 Or.App. at 90, 668 P.2d at 394. (Emphasis in original.)

The method used by the majority encourages the plaintiff to "roll the dice" instead of settling. The settlement should be deducted after applying the plaintiff's percentage of fault.

I would affirm.

---

**1.** $120,000 + $250,000 = $370,000 which is approximately 55 percent of $650,000.