859 P.2d 203

**Catherine NEIL and Alex Neil, wife and husband, Plaintiffs/Appellants,**

v.

**Cedric F. KAVENA and Karen Grace Kavena, his wife, and Samcor, Inc., dba Good Samaritan Hospital, Defendants/Appellees.**

**No. 1 CA–CV 91–326.**

Court of Appeals of Arizona,
Division 1, Department A.

Aug. 31, 1993.

**94**

Copple, Chamberlin & Boehm, P.C. by Scott E. Boehm, Steven D. Copple, Phoenix, for plaintiffs/appellants.

Rake, Downey, McGovern, Shorall & Cohen, P.C. by Don C. Stevens, II, Jones, Skelton & Hochuli by David C. Lewis, Phoenix, for defendants/appellees.

## OPINION

EHRLICH, Presiding Judge.

The sole issue in this appeal is whether a non-settling defendant in a medical malpractice action, who is severally liable, is entitled to a credit of the amount received by the plaintiffs in settlement of a related action for the same injury from other defendants. For the following reasons, we reverse the trial court's determination that the defendant is entitled to such a credit.

## FACTS AND PROCEDURAL HISTORY

The facts are undisputed. On August 27, 1987, Cedric Kavena, M.D., and Joseph Vander Veer, M.D., performed gallbladder surgery on Catherine Neil at Good Samaritan Hospital. Subsequently, Neil and her husband filed a medical malpractice action against Dr. Vander Veer and CIGNA Health Plan of Arizona, Inc., Dr. Vander Veer's employer, for injuries resulting from the surgery. Neil settled her claim against CIGNA and Dr. Vander Veer for $175,000.

On August 28, 1989, Neil and her husband filed a medical malpractice action against Dr. Kavena, his wife, and Samcor, Inc., dba Good Samaritan Hospital, for injuries arising out of the same surgery. Settlement negotiations stalled when the parties disagreed regarding whether Dr. Kavena and Good Samaritan were entitled to a $175,000 credit or offset for the settlement paid to Neil by Dr. Vander Veer and CIGNA. Instead of proceeding to trial, the parties submitted the matter to the trial court, stipulating that a jury would award Neil $175,000 "as full damages sustained by [Neil]." The stipulation further provided that Neil's claim against Dr. Kavena would be dismissed, leaving Good Samaritan as the only defendant. The parties agreed also that if the final decision was that Good Samaritan was not entitled to any credit for the settlement amount, it would pay Neil $100,000 in resolution of all claims. Conversely, they agreed that if Good Samaritan was entitled to such a credit, it would pay Neil $30,000.

The trial court determined that Good Samaritan was entitled to a credit of $175,000 and that, because the parties had stipulated that $175,000 was the amount of damages, Neil was not entitled to additional damages from Good Samaritan. Neil timely appealed.

## DISCUSSION

On appeal, Neil maintains that because her lawsuit against Good Samaritan and Dr. Kavena was commenced after the abrogation of joint and several liability, the trial

court erroneously ruled that Good Samaritan was entitled to a credit for the amount Neil received in settlement from other defendants. Dr. Kavena and Good Samaritan argue the applicability of Ariz.Rev.Stat. Ann. section ("A.R.S. §") 12–2504(1), which provides that, when one of two or more tortfeasors settles with a plaintiff in good faith, the plaintiff's claim against the non-settling tortfeasors shall be reduced by the settlement amount. Neil's response is that the statute does not apply in this case in which a non-settling tortfeasor is not jointly and severally liable for the plaintiff's damages. We agree with Neil.

■ In an effort to increase the fairness of the tort system and promote settlement of multi-party litigation, Arizona, in 1984, adopted the Uniform Contribution Among Tortfeasors Act ("Act"). The Act retained a comparative negligence scheme and created a right of contribution in a joint tortfeasor who paid more than his pro rata share of the common liability for the same injury. *Dietz v. General Electric Co.,* 169 Ariz. 505, 510, 821 P.2d 166, 171 (1991). Included in the Act was A.R.S. § 12–2504,[1] which provides that a release of one tortfeasor does not discharge other tortfeasors who are not parties to the settlement. The

claim against the remaining tortfeasors is, however, reduced by the amount paid for the release.

■ In 1987, through the enactment of A.R.S. § 12–2506,[2] the legislature abolished joint and several liability in all situations except when both parties were acting in concert and in actions relating to hazardous wastes or substances or solid-waste disposal sites. A.R.S. § 12–2506(D); *see also* A.R.S. § 12–2506(E), (F). Now, each defendant is liable only for so much of the plaintiff's damages as are allocated to that defendant in proportion to that defendant's percentage of fault. A.R.S. § 12–2506(A). Thus, with several liability, contribution is essentially unnecessary, *Dietz,* 169 Ariz. at 510, 821 P.2d at 171, reflecting a legislative policy favoring an apportionment of liability in accord with each party's responsibility. Despite the virtual elimination of joint and several liability, A.R.S. § 12–2504, which addresses contribution claims for non-settling tortfeasors, was not amended, presumably because joint and several liability still applies in a few instances. *See* A.R.S. § 12–2506(D).

In *Roland v. Bernstein,* Division Two of this court held that a non-settling defendant in a medical malpractice action found

1. The statute provides:
   If a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death both of the following apply:
   1. It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide, but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant or in the amount of the consideration paid for it, whichever is the greater.
   2. It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.

2. The statute provides in relevant part:
   A. In an action for personal injury, property damage or wrongful death, the liability of each defendant for damages is several only and is not joint, except as otherwise provided in this section. Each defendant is liable only for the amount of damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate

judgment shall be entered against the defendant for that amount. To determine the amount of judgment to be entered against each defendant, the trier of fact shall multiply the total amount of damages recoverable by the plaintiff by the percentage of each defendant's fault, and that amount is the maximum recoverable against the defendant.
   B. In assessing percentages of fault the trier of fact shall consider the fault of all persons who contributed to the alleged injury, death or damage to property, regardless of whether the person was, or could have been, named as a party to the suit. Negligence or fault of a nonparty may be considered if the plaintiff entered into a settlement agreement with the nonparty or if the defending party gives notice before trial, in accordance with requirements established by court rule, that a nonparty was wholly or partially at fault. Assessments of percentages of fault for nonparties are used only as a vehicle for accurately determining the fault of the named parties. Assessment of fault against nonparties does not subject any nonparty to liability in this or any other action, and it may not be introduced as evidence of liability in any action.

severally liable for 47% of the plaintiff's damages was not entitled to a credit against his apportioned share for settlement amounts paid by two defendants who had settled with the plaintiff even though the plaintiff would recover more than the amount the jury had determined to be her total damages. 171 Ariz. 96, 97, 828 P.2d 1237, 1238 (App.1991). The court reasoned that, because the medical malpractice action was commenced after the abrogation of joint and several liability, A.R.S. § 12–2504 did not apply and A.R.S. § 12–2506, more recently enacted, provided the proper measure of damages to be assessed against the severally-liable, non-settling tortfeasor. *Id.* The court also noted that, if the plaintiff had settled with the released defendants for less than the amount that later was determined to be their respective shares of liability, the plaintiff would have borne the burden of the disadvantageous settlement because her recovery against the non-settling tortfeasor still would have been limited to his determined percentage of fault; symmetry required that the plaintiff receive the benefit of a favorable settlement. *Id.* at 98, 828 P.2d at 1239; *see* Jefferson L. Lankford & Douglas A. Blaze, The Law of Negligence in Arizona § 5.5(4), at 128–29 (1992).

■ Similarly, the present case was brought after the virtual abolition of joint and several liability; in this type of personal-injury case, A.R.S. § 12–2504 does not apply. Like the non-settling defendant in *Roland*, Good Samaritan was seeking credit against its share of liability for settlement amounts paid by two released defendants. Also as in *Roland*, Neil would recover more than a jury would have determined to be her damages. But the proper measure of damages to be assessed against Good Samaritan is its share of liability [3] for the total damages as determined pursuant to § 12–2506 without reduction. The set-

tlement that Neil received from CIGNA and Dr. Vander Veer is irrelevant to a determination of Good Samaritan's liability for her injuries.

Settlement dollars are not synonymous with damages but merely a contractual estimate of the settling tortfeasor's liability; they include not only damages but also the value of avoiding the risk and expense of trial. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 431 (Tex.1984); *see also Charles v. Giant Eagle Markets*, 513 Pa. 474, 522 A.2d 1, 3 (Pa.1987) (fallacy that jury's verdict represents a measurement of damages superior to that agreed on by settling parties and that jury's verdict must serve as a cap on the total recovery by plaintiff). Given these components of a settlement, "[t]here is no conceptual inconsistency in allowing a plaintiff to recover more from a settlement or partial settlement than he could receive as damages." *Duncan*, 665 S.W.2d at 431–32.

■ Courts in other jurisdictions and commentators have remarked that awarding non-settling defendants a windfall from favorable settlements procured by other defendants is unfair to plaintiffs who must bear the burden of low settlements and would discourage some defendants from settling in anticipation of acquiring the benefits of the settlements of their co-tortfeasors. *Charles*, 522 A.2d at 3; *Kussman v. City and County of Denver*, 706 P.2d 776, 782 (Colo.1985) (superseded by statute); *Wilson v. Galt*, 100 N.M. 227, 232, 668 P.2d 1104, 1109 (App.1983); Lankford & Blaze, *supra*, at 129; Comments, *Comparative Negligence, Multiple Parties, and Settlements* ("Comment"), 65 Calif.L.Rev. 1264, 1278–79 (1977). Holding a non-settling tortfeasor liable for his full proportionate share of a plaintiff's damages without reducing the amount paid in settlement by other tortfeasors advances this state's strong policy of encouraging

---

**3.** Because of the posture of this case, there was no actual jury determination of the amount of Neil's damages nor Good Samaritan's share thereof. However, had the case proceeded to trial, Good Samaritan could have submitted the issue of Dr. Vander Veer's and CIGNA's negligence to the jury so that the damages could be apportioned to the settling defendants. *See* A.R.S. § 12–2506(B). Good Samaritan's liability would have been limited to the amount of damages allocated to it in proportion to its determined percentage of fault. A.R.S. § 12–2506(A).

settlement even if in some circumstances it results in a plaintiff's receipt of more than the amount of damages determined by the trier of fact. *See Dietz,* 169 Ariz. at 509, 821 P.2d at 170.

Good Samaritan contends, however, that Arizona's common law "single-recovery rule," codified in A.R.S. § 12–2504, supports the trial court's ruling. It claims that a refusal to allow an offset for the settlement by CIGNA and Dr. Vander Veer against its share of liability results in an impermissible double recovery by Neil. We disagree.

The single-recovery rule, which historically permitted defendants a credit for amounts paid in settlement by other defendants to prevent a plaintiff's excess recovery, was adopted when courts could not allocate liability among defendants; a settling defendant could only offer to pay for a plaintiff's entire, indivisible injury. *Duncan,* 665 S.W.2d at 431. Now, the respective shares of the liability of multiple defendants can be determined. *See* A.R.S. § 12–2506. Each defendant may settle his portion and such settlement neither affects the amount of harm caused by the remaining defendants nor the liability. *Duncan,* 665 S.W.2d at 431. The settling defendant simply has paid an agreed amount to "buy his peace" and the non-settling defendant has no right to complain that the settling defendant paid too much. *Id.; see also* Comment, 65 Calif.L.Rev. at 1278–79.

Good Samaritan points out that Neil's lawsuit against Dr. Vander Veer and CIGNA was filed prior to the abrogation of joint and several liability. It then states that CIGNA and Dr. Vander Veer settled with Neil under the assumption that they were compensating Neil for her entire damages. Neil's settlement with CIGNA and Dr. Vander Veer clearly did not extinguish either Good Samaritan's or Dr. Kavena's liability. In addition, pursuant to A.R.S. § 12–2501(D), CIGNA and Dr. Vander Veer had no right of contribution against Dr. Kavena and Good Samaritan after they settled with Neil. Therefore, CIGNA and Dr. Vander Veer had no incentive to pay Neil's entire damages and presumably settled for the amount each considered to be a pro rata share of liability.

Good Samaritan additionally asserts that *Shelby v. Action Scaffolding, Inc.,* 164 Ariz. 302, 792 P.2d 765 (App.1990), *vacated,* 171 Ariz. 1, 827 P.2d 462 (1992), supports the trial court's holding that it was entitled to credit the $175,000 paid in settlement against its share of liability for Neil's damages. In *Shelby,* Division Two of this court held that, pursuant to A.R.S. § 12–2504, the amount a plaintiff receives in settlement from a joint tortfeasor should be deducted from the total amount of damages found by the jury before reducing those damages in proportion to the plaintiff's relative degree of fault. *Id.* at 304–05, 792 P.2d at 767–68. While the supreme court vacated the court of appeals' opinion, it adopted its reasoning. 171 Ariz. at 3, 8, 827 P.2d at 464, 469. Although *Shelby* does, as Good Samaritan argues, reinforce a party's right to a credit pursuant to § 12–2504(1), the action in *Shelby* was commenced prior to the abolition of joint and several liability and thus is not applicable to a case initiated after the enactment of A.R.S. § 12–2506. In *Roland,* Division Two likewise distinguished *Shelby,* observing that it did not apply to *Roland* because it involved joint and several liability. 171 Ariz. at 98, 828 P.2d at 1239.

■ Good Samaritan raises as a cross-issue that Neil's interpretation of A.R.S. § 12–2506 retroactively deprives it of constitutional rights under A.R.S. § 12–2504. It characterizes as Neil's position that § 12–2506 impliedly repealed § 12–2504.[4] While Good Samaritan admits that § 12–2506 by its terms applies to lawsuits filed after December 31, 1987, as was this one, it

---

**4.** Relying on principles of statutory construction, Good Samaritan maintains that because A.R.S. § 12–2504 was unaltered, it is entitled to a reduction for the amount of money paid in settlement by Dr. Vander Veer and CIGNA. We agree that the single-recovery rule is intact but disagree that it applies in the present case. Be-

cause joint and several liability remains in certain circumstances, *see* A.R.S. § 12–2506(D), § 12–2504 still would apply in situations involving settlements with one joint tortfeasor. Therefore, Neil's argument and the position of the court in *Roland,* 171 Ariz. at 97–98, 828 P.2d at 1238–39, do not render § 12–2504 invalid.

**98**

nevertheless claims that disallowance of a credit for the settlement received by Neil based on § 12–2506 would result in the unconstitutional retroactive application of a tort-reform statute. We hold, however, that application of § 12–2506 to this case is not unconstitutional.

Good Samaritan had no constitutional right to invoke the law of joint and several liability. *See Church v. Rawson Drug & Sundry Co.*, 173 Ariz. 342, 346, 842 P.2d 1355, 1359 (App.1992) (statute abrogating joint and several liability constitutional; a party has no vested right in a particular remedy or mode of procedure). The legislature clearly intended A.R.S. § 12–2506 to apply to cases filed after December 31, 1987, the statute's effective date, even if the cause of action accrued previously. Therefore, applying § 12–2506 in this case to prohibit Good Samaritan from crediting the settlement proceeds received by Neil from settling defendants against Good Samaritan's apportioned share of liability is not an unconstitutional retroactive application.

## CONCLUSION

Good Samaritan is not entitled to a credit for the $175,000 paid in settlement by CIGNA and Dr. Vander Veer. Rather, because Neil's lawsuit against Good Samaritan and Dr. Kavena was commenced after the abrogation of joint and several liability, A.R.S. § 12–2506 is the proper measure of Good Samaritan's liability without any reduction under A.R.S. § 12–2504 for the $175,000 settlement. Accordingly, the judgment of the trial court is reversed and the matter is remanded for proceedings consistent with this decision.

CONTRERAS and KLEINSCHMIDT, JJ., concur.